IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

BLEAUREGARD KASADU                                    Civ. No. 6:25-cv-00324-AA

                        Plaintiff,                            **OPINION & ORDER**

        v.

MID-WILLAMETTE VALLEY
COMMUNITY ACTION AGENCY,

                        Defendant.
_____

AIKEN, District Judge.

        Self-represented Plaintiff Bleauregard Kasadu seeks leave to proceed *in forma pauperis* ("IFP") in this action.  ECF No. 2. Plaintiff has also moved to file an Amended Complaint, a Motion for Temporary Restraining Order ("TRO"); and a Motion for Expedited Hearing. The Court addresses each motion in this opinion.

        For the reasons set forth below, Plaintiff's IFP Petition, ECF No. 2, is GRANTED. Plaintiff's Motion to File an Amended Complaint, ECF No. 11, is GRANTED, however, the First Amended Complaint ("FAC") is DISMISSED without leave to amend, and without service on Defendant. Plaintiff's Motion for Judicial Notice, ECF No. 12, is GRANTED. Plaintiff's Motion for TRO, ECF No. 13, is DENIED. Plaintiff's Motion for an Expedited Hearing, ECF No. 15, is DENIED.

## BACKGROUND

Plaintiff and Defendant reside in Oregon. FAC at 1, ECF No. 11-1. Defendant Mid-Willamette Valley Community Action Agency provides social services to those facing housing uncertainty or instability. Plaintiff joined Defendant's program for sheltering services as a client on November 29, 2023. FAC at 82. He was allocated bed 74, four storage containers placed beneath the bed, three meals a day, and case management services. Plaintiff was also provided linens and laundry soap. Additionally, Plaintiff was permitted to use the shelter's facilities during specified hours.

While living at the shelter, Plaintiff gave his gave his female caseworker "a note expressing romantic feelings for her." FAC ¶ 235. Defendant held a meeting and told him to refrain from that conduct. Nevertheless, Plaintiff gave the caseworker a red rose, a gym bag, a worry stone, and a taco bell sauce packet with the text "I like you" printed on it. FAC at 13. Plaintiff explains that he wanted to have a "romantic" or "friendly" partnership with the case worker. *Id.* at 5. Plaintiff alleges that the female caseworker was "standoffish, and dismissive, avoiding eye contact and conversations with him, sometimes projecting she outright dislikes him." FAC ¶ 238.

Defendant met with Plaintiff again and explained that caseworkers were not permitted to form close relationships with their clients for ethical reasons. Defendant asked Plaintiff to sign a "behavioral modification contract" reflecting that he had engaged in sexual harassment of his case manager. *Id.* Plaintiff states that Defendant determined Plaintiff was not complying with its Code of Conduct, namely "Social

Conduct, Section Q, and Article XII, Section B of the Transitional Shelter Program Rules and Expectations." FAC at 12. Defendant determined that it was "in the best interest of Plaintiff to be removed from Salem Navigation Center," and he would be transferred to Arches Lodge, a new shelter, and instructed not to contact his former case manager. FAC at 6, 16. Plaintiff, upset, contacted several of Defendant's employees, including its executive director, complaining about the policy forbidding him to form a relationship with the caseworker. FAC ¶¶ 267-273. Plaintiff explains that, in the past, he has been subject to stalking orders in the past. FAC ¶ 368.

Plaintiff desired to participate in the Marion County Rapid Rehousing Program, ("rehousing program") which provides vouchers for permanent housing and offers up to 24 months of rental assistance for an approved dwelling unit. FAC at 84. Plaintiff was eligible for a housing voucher on March 5, 2024. FAC ¶ 212. He asked Defendant if the housing voucher covered pet deposits and pet rent, as well as money for internet services. Defendant let him know those expenses were not eligible for funding under the program. FAC ¶ 213-214.

Plaintiff alleges that, in addition to monthly rental assistance, the program offers a $1,500 benefit in "barrier removal funds," which include "Amazon gift cards or other funding for furnishing the home, purchasing household items, addressing other needs, and/or removing barriers to housing." FAC at 85. Plaintiff "was under the impression that he had been part" of the rehousing program and was eligible for its benefits, including the barrier removal funds. FAC at 86. However, Defendant told Plaintiff that those funds were no longer available. FAC ¶ 219. Citing "security

concerns about stalkers, Plaintiff ultimately told Defendant "he was not ready to be housed." FAC ¶ 275. He formally requested a pause on his participation in the rehousing program. FAC ¶ 291. Plaintiff asserts that he notified Defendant that he still expected to receive funds for rental assistance, despite his lack of participation in the program, stating that his reliance "constituted a lien on the funds." *Id.*

## LEGAL STANDARDS

Generally, all parties instituting any civil action in United States District Court must pay a statutory filing fee. 28 U.S.C. § 1914(a). However, the federal IFP statute, 28 U.S.C. § 1915(a)(1), provides indigent litigants an opportunity for meaningful access to federal courts despite their inability to pay the costs and fees associated with that access. To authorize a litigant to proceed IFP, a court must make two determinations. First, a court must determine whether the litigant is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a)(1). Second, it must assess whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2)(B).

With regard to the second of these determinations, district courts have the power under 28 U.S.C. § 1915(e)(2)(B) to screen complaints even before service of the complaint on the defendants and must dismiss a complaint if it fails to state a claim. Courts apply the same standard under 28 U.S.C. § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive a motion to dismiss under the federal

pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

*Pro se* pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). That is, the court should construe pleadings by *pro se* plaintiffs liberally and afford the plaintiffs the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.*

Although there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, *Pisciotta v. Teledyne Industries, Inc.,* 91 F.3d 1326, 1331 (9th Cir.1996), or where the amended complaint would also be subject to dismissal, *Saul v. United States,* 928 F.2d 829, 843 (9th Cir.1991). The Court has discretion to deny a motion to amend a complaint. *Johnson v. Buckley,* 356 F.3d 1067, 1077 (9th Cir.2004) (a

district court's denial of a motion to amend a complaint is for abuse of discretion). Although five factors generally are considered when assessing the propriety of a motion to amend, the futility of amendment alone can justify the denial of a motion. *Ahlmeyer v. Nevada Sys. of Higher Educ.*, 555 F.3d 1051, 1055 (9th Cir. 2009)

## DISCUSSION

I.    Determination of Indigency Under 28 U.S.C. § 1915(a)(1)

When assessing an IFP petition, the Court first must determine whether the plaintiff has made a sufficient showing of indigency.  Here, the Court is satisfied by Plaintiff's showing and so Plaintiff's IFP Petition is GRANTED without service of the Complaint on Defendant.

II.    Assessment of Complaint Under 28 U.S.C. § 1915(e)(2)(B).

A.    Moton to Amend and Motion for Judicial Notice

As an initial matter, Plaintiff has moved the Court to file a first amended complaint. ECF No. 11. Plaintiff also seeks to supplement the record with an audio recording and transcript of the audio recording of the meeting between Defendant and Plaintiff discussing Plaintiff's alleged code of conduct violations. ECF No 12.

The Court grants Plaintiff's motion to file the amended complaint and his motion to supplement the record. ECF Nos. 11, 12.  Plaintiff's complaint is over 300 pages, and he alleges that it was drafted with the assistance of ChatGPT. FAC ¶ 9. The complaint includes over 1,200 pages of exhibits. Plaintiff conferred with Defendant's counsel, who did not oppose amendment. However, Defendant's counsel provided sound information to Plaintiff about filing his complaint, namely, that it

should be a plain and concise statement of the facts and law at issue in the case. Mot. to Amend at 3, ECF No. 11. Plaintiff argues that the number of exhibits filed are necessary to the Court's understanding of the issues in the case. *Id.* at 9-10. The Court accepts that Plaintiff is untrained in litigation and accepts his submission of exhibits incorporated into his allegations.

B.    Screening Complaint Under 28 U.S.C. § 1915(e)(2)(B).

Plaintiff brings his claims under 42 U.S.C. § 1983 for violations of his rights under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments. Plaintiff alleges that Defendant violated his rights when it denied paying for future internet services, *id.* at 15; denied paying for pet rent, *id.*; transferred him from his former shelter to a new shelter, *id.* at 16; denied access to a copy of the "grant agreement" between Defendant and the Oregon Housing and Community Services Department, *id.* at 17; and that Defendant breached its "lease" agreement with the state, *id.* Plaintiff also claims that Defendant denied him "fraternization" with its employees, when it prohibited him from "maintain[ing] intimate associations of friendships and/or romantic partnerships" with its caseworker. *Id.* at 5, 12.

1.    State Action

Plaintiff alleges that Defendant is a state actor because they operate shelters that receive government funding. *Id.* at 11-12. Plaintiff also cites to other federal enactments, state laws, and state regulations that endow Defendant with the funding and operational authority to provide community services. *Id.* at 18-23.

Notwithstanding appropriate affirmative defenses, at this stage of litigation, Plaintiff has plausibly alleged that Defendant is a state actor.

### 2.    Right to Intimate Association

Plaintiff alleges that Defendant must permit Plaintiff and other staff members to engage in "intimate association" and allow him to give gifts to his caseworker. FAC ¶¶ 150-161. He alleges Defendant prohibited him from such, based on its Transitional Shelter Program Rules and Expectations ("shelter rules"). FAC ¶¶ 183-191. The shelter rules prohibit sexual conduct between caseworkers and their clients—benefits recipients like Plaintiff. It also restricts social contact between caseworkers and clients to the interactions scheduled by the program. FAC ¶ 185. The shelter rules also prohibit its staff and their clients from exchanging questions of a personal or sexual nature and prohibit gift-giving. FAC ¶ 184-188.

Plaintiff alleges that Defendant violated his rights when it (1) disciplined Plaintiff for continuing to give gifts to his caseworker; (2) asking Plaintiff to cease contact with his caseworker; (3) restricting or deterring its employees from associating with Plaintiff; (4) adopting policies restricting fraternization and prohibiting excessive familiarity, asking questions of a personal nature, giving gifts, and having social conduct outside of that scheduled by Defendant's programs. FAC ¶¶ 161; 183-191.

The First Amendment's freedom of association protects groups whose activities are explicitly stated therein: speaking, worshiping, and petitioning government. *IDK, Inc. v. Clark Cnty.*, 836 F.2d 1185, 1191 (9th Cir. 1988). The relationships protected

by the Fourteenth Amendment are those that attend the creation and sustenance of a family and similar highly personal relationships. *Id.* at 1193. Plaintiff's claim is more appropriately categorized under the Fourteenth Amendment right of intimate association rather than the First Amendment. Plaintiff alleges no facts from which the Court can infer an associational interest arising under the First Amendment. As for the Fourteenth Amendment, the Supreme Court has stated that the constitution protects certain kinds of highly personal relationships, and it is the personal nature of the relationship for which Plaintiff seeks the Court's protection. *See Quiroz v. Short*, 85 F. Supp. 3d 1092, 1108 (N.D. Cal. 2015) (discussing precedent distinguishing between claims under the First and Fourteenth Amendments).

Plaintiff fails to state a claim under § 1983 for violation of his right to intimate association under the Fourteenth Amendment. Plaintiff has alleged no facts plausibly demonstrating that his client-based relationship with his caseworker is the sort of "intimate association" protected under the Fourteenth Amendment. Such protection extends only to "certain kinds of highly personal relationships." *See Erotic Serv. Provider Legal Educ. & Rsch. Project v. Gascon*, 880 F.3d 450, 458 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018) (explaining that the service provider-client relationship did not receive Fourteenth Amendment protections). That Plaintiff *desires* to have a highly personal relationship with his caseworker, against her wishes, does not transform the caseworker-client relationship into one the Fourteenth Amendment protects.

As a general matter, Defendant's anti-fraternization policy is akin to anti-harassment policies routinely upheld by courts. The law prohibits sexual harassment in the workplace and encourages employers create policies like Defendant's that are aimed at defining and preventing sexual harassment. *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 877 (9th Cir. 2001). The law encourages written antiharassment policies that define terms, set forth reporting procedures, and explain how employees who violate the policy will be disciplined. *Id.*

There are no facts Plaintiff could allege to cure the defects in this claim. Accordingly, it is DISMISSED without leave to amend, as doing so would be an exercise in futility. *Ahlmeyer,* 555 F.3d at 1055.

### 3.    Breach of Lease Agreement

Plaintiff's complaint provides background information about Defendant's governmental contracts. FAC ¶¶ 30-38. Plaintiff alleges that Defendant has breached its lease agreement (and its other government contracts) between it and the state. *Id.* Plaintiff alleges that those contracts require Defendant to comply with the law. *Id.* Plaintiff asserts that Defendant unlawfully deprived him of his rights, thereby breaching its obligations to the government to comply with the law. The Court construes this as a purported breach of contract claim. FAC ¶¶ 171-182.

Plaintiff lacks standing to enforce contracts between Defendant and the government because he is not a party to those contracts. Only a party to a contract or an intended third-party beneficiary may sue to enforce the terms of a contract or obtain an appropriate remedy for breach. *See Far West Fed. Bank, S.B. v. Office of*

*Thrift Supervision–Dir.,* 119 F.3d 1358, 1363 (9th Cir. 1997). The fact that a third party may incidentally benefit under the contract does not confer on him the right to sue; instead, the parties must have intended to benefit the third party. *GECCMC 2005-C1 Plummer St. Off. Ltd. P'ship v. JPMorgan Chase Bank, Nat. Ass'n*, 671 F.3d 1027, 1033 (9th Cir. 2012).

This distinguishes intended beneficiaries to a contract whose rights are judicially enforceable from incidental beneficiaries whose rights are not judicially enforceable. *Id.* Important here, parties that benefit from a government contracts are generally assumed to be incidental beneficiaries, rather than intended beneficiaries, and so "may not enforce the contract absent a clear intent to the contrary." *Id.* That is a high burden.

Moreover, as explained elsewhere in this opinion, Plaintiff has not shown that Defendant has violated any law. Even if he could meet the high burden of demonstrating that he is an intended beneficiary of Defendant's government contracts, he has failed to show that Defendant breached it, based on a failure to comply with the law.

Liberally construed, and taking all the allegations as true, the complaint fails to set forth sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 This claim is DISMISSED without leave to amend as doing so would be an exercise in futility.

4.    Right to "Barrier Removal" Funds

Plaintiff alleges that he voluntarily resigned eligibility for the rehousing program because he was not ready to pursue permanent housing. FAC ¶¶ 192-200, 202. However, in Plaintiff's view, Defendant should have nevertheless provided him $1,500 in the barrier removal funds. Plaintiff asserts that he had a planned to use the money for furniture and that he had a "vested interest" in the barrier removal funds and that Defendant cannot deny him those funds without violating the Fifth and Fourteenth Amendments. FAC ¶¶ 201, 203. Plaintiff also claims he was legally entitled to have his pet rent and internet services covered. FAC ¶¶ 192-203; 210-221).

It has long been held that the due process clauses of both the Fifth and Fourteenth Amendments are intended to prevent governmental abuse of power, and "generally confer no affirmative right to governmental aid". *DeShaney v. Winnebago County Dep't of Soc. Servs.,* 489 U.S. 189, 196 (1989). Moreover, with respect to equal protection, the constitutionality of Defendant's denial of the $1,500 funding is reviewed under a rational basis standard, since houselessness, poverty, or welfare recipient status alone is not a suspect classification demanding strict scrutiny. *See Harris v. McCrae,* 448 U.S. 297, 323 (1980). Consequently, the government need only show a rational relationship between its denial of the $1,500 funding and a legitimate governmental purpose. *Bd. Of Trs. Of Univ. Of Ala. v. Garrett,* 531 U.S. 356, 367 (2001).

Here, Defendant could easily show a rational relationship between its allocation of limited funds for essential items and its requirement that Plaintiff participate in the rehousing program to receive those funds. Notably, taking the

allegations in Plaintiff's complaint as true, the funding is intended to cover expenses that would otherwise constitute a barrier to long-term housing. When he might have been eligible for the funding, Plaintiff sought money for pet rent and internet services—items Defendant stated were not eligible expenses under the rehousing program. Later, Plaintiff removed *himself* from eligibility from the program, resulting in the loss of any eligibility for the barrier removal funds. Defendant did not remove Plaintiff from the rehousing program, nor did it condition receipt of funding or housing on relinquishing of a constitutional right.

Plaintiff has failed to allege a claim under § 1983 that his due process right was violated by Defendant's allocation of funds. Liberally construed, and taking all the allegations as true, the complaint fails to set forth sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. There are no facts Plaintiff could allege to cure the defects identified, thus amendment would constitute an exercise in futility. This claim is DISMISSED without leave to amend.

5.    Financial Mismanagement and Denial of Records

Plaintiff asserts his "suspicion" that Defendant mismanages its public funding. FAC ¶ 204. He asserts, as proof, that he was "denied benefits he reasonably suspected should have been available to him," such as the $1,500 in funding, described above. FAC ¶ 209. He maintains he has a legal right to a copy of any grant agreement between the state and Defendant so that he can "understand the specifics of the funding conditions" that gave way to the depravation of his civil rights. FAC ¶ 209.

Plaintiff alleges that he submitted a petition to the Attorney General's Office under ORS 192.411(1) from their website to see a copy of the grant. FAC ¶¶ 227. His petition was denied on the grounds that Defendant is not a state agency, and therefore does not fall under the Attorney General's jurisdiction to hear the petition. *Id.* Plaintiff asserts that Defendant's failure to provide him with a copy if its grant from the state violated Plaintiff's fundamental rights under the Fourteenth Amendment. FAC ¶¶ 204-209, 222-230.

As Plaintiff acknowledges, there is no constitutional right to receive government records. FAC ¶ 162; *Houchins v. KQUED, Inc.*, 438 U.S. 1, 15 (1978) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."). Additionally, without supplemental jurisdiction, the alleged violations of state law—in this instance, Oregon Public Records Law, cannot sustain a § 1983 claim. *See Galen v. Cty. of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007) ("Section 1983 requires [Plaintiff] to demonstrate a violation of federal law, not state law"). Finally, taking Plaintiff's allegations as true, Defendant is not a state agency subject to Oregon's public records laws. FAC ¶ 227.

Liberally construed, and taking all the allegations as true, the complaint fails to set forth sufficient factual matter to state a claim under § 1983 based on a violation of his rights under the Fifth and Fourteenth Amendments that is plausible on its face. *Iqbal*, 556 U.S. at 678. There are no facts Plaintiff could allege to cure the defects

identified; thus, amendment would constitute an exercise in futility. This claim is DISMISSED without leave to amend.

6.     Right to Housing at Salem Navigation Center

Plaintiff asserts that removing him from the Salem Navigation Center to the Arches Lodge violated his due process right under the Fourteenth Amendment. FAC ¶ 434.

The Fourteenth Amendment provides, in relevant part, that no state "shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause guarantees not only procedural protections, but also substantive rights, thereby "barring certain government actions regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Substantive due process accordingly "forbids the government from depriving a person of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 870 (9th Cir. 1988)

To the extent Plaintiff is arguing that he has an absolute right to being housed at the shelter of his choosing, such an argument fails to state a valid claim to relief. The United State Constitution does not guarantee government provision of shelter to the homeless. *See e.g., Lindsey v. Normet,* 405 U.S. 56, 74 (1972). Plaintiff's allegations are that he engaged in a pattern of behavior toward his caseworker that violated Defendant's code of conduct; that he chose to eliminate himself from the long-term housing program; and chose to disengage from his services. FAC ¶¶ 231-233;

235; 275; Plaintiff's allegations are that Defendant provided him with notice and a hearing for their decisions, including a meeting involving his former caseworker. FAC ¶¶ 3, 22, 23, 38. Plaintiff maintains that other caseworkers reached out to him to maintain his engagement in Defendant's programs. FAC ¶ 231. Plaintiff appears to continue to receive shelter services from Defendant.

Accordingly, Plaintiff has failed to allege a single fact that gives rise to a plausible claim for relief under § 1983, where the pleadings fail to show that Defendant deprived Plaintiff of life, liberty, or property in such a way that "shocks the conscience." *Nunez*, 147 F.3d at 870. No allegation can cure the defects identified by the Court. This claim is DISMISSED without leave to amend.

III.    Motion for TRO

Plaintiff filed a TRO unrelated to his claims on the merits under § 1983, discussed above. Instead, he asserts that a stalking protective order has been entered against him in Marion County Circuit Court, case number 25SK01289. ECF No. 13 at 2. Petitioner for the stalking order is his former caseworker. In sum, Plaintiff's motion for a TRO defends his behavior, which petitioner had complained of, and the state court found to constitute threatening or unwanted. He further asserts that the state court's stalking order was entered in error. He argues that he is entitled to relief from the stalking order.

Plaintiff's TRO is barred under the *Rooker-Feldman doctrine*. The *Rooker–Feldman* doctrine has evolved from two Supreme Court cases, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman,* 460

U.S. 462 (1983). *Rooker–Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment. *Kougasian v. TMSL, Inc.,* 359 F.3d 1136, 1139 (9th Cir.2004).

A de facto appeal from a state court judgment exists when a federal plaintiff both asserts legal errors by the state court as his injury, and seeks relief from the state court judgment as his remedy. *Noel v. Hall,* 341 F.3d 1148, 1163 (9th Cir.2003); *see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005) (*Rooker–Feldman* applies only to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.")

If both requirements for a forbidden de facto appeal are satisfied, *Rooker– Feldman* provides that the lower federal courts have no jurisdiction to hear the claims. Where a federal plaintiff brings a claim or claims barred by *Rooker–Feldman,* claims which do not literally fall within *Rooker–Feldman,* but which involve issues which are "inextricably intertwined" with the issues decided in state court are also outside the jurisdiction of the court under *Rooker– Feldman. Kougasian,* 359 F.3d at 1142-43.

Here, the requirements for a forbidden de facto appeal are satisfied. The Court has no jurisdiction over the issues asserted in Plaintiff's TRO and it is therefore DENIED in accordance with Rule 12(b)(1). Plaintiff's motion for an expedited hearing, ECF No. 15, is also DENIED.

CONCLUSION

For the reasons explained above, the Court lifts the stay entered on April 15, 2025, ECF No. 14. Plaintiff's application to proceed IFP, ECF No. 2, is GRANTED to the extent that he is exempt from paying any filing fees. However, Plaintiff's Amended Complaint, ECF No.11, is DISMISSED without leave to amend and without service on Defendant. Plaintiff's Motion for Leave to Amend and Take Judicial Notice, ECF No. 12, is GRANTED. Plaintiff's Motion for Temporary Restraining Order, ECF No. 13, is DENIED for lack of subject matter jurisdiction. Plaintiff's Motion for an Expedited Hearing, ECF No. 15 is DENIED. This case is DISMISSED and JUDGMENT will be entered accordingly.

It is so ORDERED and DATED this 7th day of July, 2025.

<u>       s/Ann Aiken                  </u>
ANN AIKEN
United States District Judge